ERCO INDUSTRIES LIMITED, A Corporation, Plaintiff-Appellee,

v.

SEABOARD COAST LINE RAILROAD COMPANY et al., Defendants-Appellants.

No. 80–5370.

United States Court of Appeals, Fifth Circuit. Unit B

May 4, 1981.

Phil C. Beverly, Jacksonville, Fla., Richard A. Hollander, Richmond, Va., for defendants-appellants.

Belnap, McCarthy, Spencer, Sweeney & Harkaway, Harold E. Spencer and Stephen C. Herman, Chicago, Ill., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and FRANK M. JOHNSON, Jr., and ANDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Erco Industries Limited brought this action pursuant to 28 U.S.C.A. § 1336(a) and the Interstate Commerce Act § 16(2), 49 U.S.C.A. § 16(2), to enforce an order of the Interstate Commerce Commission awarding damages to Erco because certain rates charged by the defendant railroad companies were unjust and unreasonable in violation of 49 U.S.C.A. § 1.[1] The railroads

1. Under Pub. L. 95–473, 92 Stat. 1337 (1978), the Interstate Commerce Act, as amended, has been completely recodified as Subtitle IV of Title 49 of the United States Code. 49 U.S.C. §§ 10101–11916 (Supp. II 1978). Section 4(b) of Pub. L. 95–473 repealed the sections or parts

appeal from the district court's grant of summary judgment in favor of Erco. We affirm.

Erco, a producer of chemicals, entered into long term contracts for the supply of phosphate rock which it used in its chemical production. Erco entered into one such contract with American Cyanamid Company ("Cyanamid") and another with the Phosphate Rock Export Association. Cyanamid's contractual obligations to Erco were fulfilled by Brewster Phosphates, a partnership composed of Cyanamid and Kerr-McGee Corporation, while the Association delegated its contractual obligations owed to Erco to one of its members, International Minerals and Chemical Corporation ("IMC"). IMC and Brewster were the consignors of the phosphate shipments to Erco, which was the named consignee on the railroad bills of lading. Erco ultimately bore the transportation charges, which had been prepaid to the railroads by the consignors, by reimbursing the consignors for such charges. The consignors placed orders for rail cars with Seaboard Coast Line Railroad ("Seaboard") which was the originating carrier on all of the shipments involved in this case. The phosphate rock was shipped from Florida to Canada.

Throughout the pertinent period in this case, from March to April 1973, the joint single-car rate under the tariff to which all the defendants were parties was $12.73 per net ton whereas the joint multiple-car rate was $8.74 per net ton. The required minimum weight per car for the multiple-car rate was 140,000 pounds, with a total required minimum weight per shipment of 3,500 tons. The consignors utilized multiple-car rates on all phosphate rock shipments to Erco prior and subsequent to the period covered by the complaint. On March 6, 1973, the Interstate Commerce Commission responded to a severe rail car shortage caused by increased demand for phosphate rock with a service order which limited origin demurrage free time from 48 to 24 hours and substantially increased demurrage charges. Seaboard, the originating carrier, was unable to meet the requests for cars from shippers on its lines, and in light of that situation Erco agreed to accept shipments weighing less than 3,500 tons. As a result, the railroads charged the consignors at the higher single-car rate on shipments moving to Erco during March and April of 1973.

On August 11, 1975, Erco filed a complaint with the Commission averring that the railroads unjustly and unreasonably charged it at the single-car rate which was substantially higher than the multiple-car rate to which Erco alleged it was entitled. An administrative law judge dismissed Erco's complaint but the Commission on administrative appeal reversed the administrative law judge and awarded Erco reparation constituting the difference between the single-car rate and the multiple-car rate. *Erco Industries, Ltd. v. Seaboard Coast Line R.R. Co.*, 356 I.C.C. 652 (1977) (*"Erco I"*). The Commission's decision in *Erco I* was based on its prior opinion in *Ormet Corp. v. Illinois Central R. Corp.*, 341 I.C.C. 647 (1972), which held that, during the existence of outstanding car service orders where the originating carrier, i. e., the railroad responsible for supplying the cars, is unable to furnish an adequate number of cars to enable a shipper to satisfy the published tariff minimum weight requirements for the multiple-car rate, the carrier's application of the single-car rate is prima facie unjust and unreasonable to the extent the multiple-car rate is exceeded. However, a shipper must affirmatively show that it was in a position to take advantage of the lower multiple-car rate, that it timely ordered the requisite number of cars from the carrier, and that it was able to accept and load the cars ordered, only to find that the carrier railroad was unable to furnish a sufficient number of cars prior to the commencement of demurrage charges.

of the Interstate Commerce Act except, inter alia, for proceedings that were begun before October 17, 1978, the effective date of the reco-

dified Act. In this case Erco filed its complaint in district court on October 21, 1977.

In order to obtain judicial review of the Commission's order in *Erco I*, the railroads refused to pay, thus prompting Erco to file its enforcement suit in district court. The district court denied Erco's motion for summary judgment and remanded to the Commission for clarification of an ambiguity in the Commission's findings in *Erco I*. The Commission's statement in its factual recitations that the consignors rather than Erco ordered the cars from Seaboard was contradicted by its conclusion that the evidence was convincing that Erco timely ordered the equipment from Seaboard. The district court in remanding to the Commission stated that the finding as to which entity actually ordered the cars from Seaboard was significant because it might be determinative as to which party had the responsibility of allocating the cars to Erco.

On remand the Commission found that the orders for the cars were placed by the consignors rather than by Erco. 361 I.C.C. 814 (1979) (*"Erco II"*). However, the Commission stated that whether Erco or the consignors placed the orders was not of material significance because

> The evidence demonstrates that the consignors could not have accumulated enough cars for the ERCO movement without incurring demurrage, even if all the transportation needs of all other consignees had been ignored.

The Commission in *Erco II* reaffirmed its earlier ruling in favor of Erco and held that the requirements of *Ormet Corp. v. Illinois Central R. Co., supra*, 341 I.C.C. 647, were satisfied by Erco. The Commission found that Erco relied on *Ormet* in agreeing to accept shipments whose total weight was below that required for the multiple-car rate.

After the Commission rendered its decision in *Erco II*, Erco filed its second motion for summary judgment. The district court granted Erco's motion and rendered judgment in favor of Erco. The court noted that the Commission in *Erco II* clarified the ambiguity that had existed in *Erco I*.

The railroads on appeal urge that the district court erred in granting summary judgment because genuine issues of material facts exist and because the Commission's decision was arbitrary and unsupported by substantial evidence. They also contend that the district court's failure to provide them with an oral evidentiary hearing on Erco's motion for summary judgment was a denial of due process. Finally, they argue that the district court failed in its summary judgment order to adequately consider whether the Commission properly applied *Ormet* and also failed to state the reasons for its enforcement of the Commission's order.

Under Fed.R.Civ.P. 56, summary judgment may only be granted "if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists." *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980) (emphasis in original). The burden of proof falls upon the party seeking the summary judgment and all reasonable doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Id.* The district court in considering whether to grant a motion for summary judgment must view the evidence in the light most favorable to the non-movant, and our standard of review is the same. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

The railroads insist that there is a genuine issue as to the existence of two material facts: the control and responsibility exercised over the number of cars received by Erco from the consignors, and the number of cars that the consignors had available to supply Erco's needs. The railroads contend that the consignors did in fact have enough cars to satisfy Erco's multiple-car order and that the railroads had no responsibility for allocating cars to Erco.

The administrative law judge's finding that the consignors could have supplied a sufficient number of cars to Erco to enable Erco to obtain the multiple-car rate was overturned by the Commission's subsequent finding on appeal from the administrative law judge's ruling. The Commission found that the consignors could not have ade-

quately supplied Erco's needs without incurring demurrage charges, even if they had refused to provide cars to their other customers. The availability of cars in this case, *i. e.*, Seaboard's ability to furnish the consignors with a sufficient number of cars to meet Erco's requirements, must be considered in light of *Ormet.* The Commission found that Erco relied on *Ormet*, which allows a shipper to recover the difference between multiple-car and single-car rates where a carrier is unable to provide an adequate number of cars for the multiple-car rate to a shipper without that shipper incurring demurrage charges. The issue before the Commission was whether, under the *Ormet* rule, Seaboard could have supplied the consignors with sufficient cars for them to be able to fulfill Erco's requirements without the consignors being forced to incur demurrage charges in accumulating cars until enough cars were obtained for the multiple-car rate.

▮▮▮ Where a carrier fails to comply with a Commission reparation order, the shipper has the right under Section 16(2) of the Interstate Commerce Act, 49 U.S.C.A. § 16(2), to file suit in state or federal court to enforce the Commission's order.[2] Such an action is the means by which a carrier may obtain judicial review of the Commission's order. The scope of review of the factual findings and findings on mixed questions of fact and law of the Commission is whether such findings are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or whether they are "unsupported by substantial evi-

dence." *Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 218 (5th Cir. 1979); Administrative Procedure Act § 706, 5 U.S.C.A. § 706.

The railroads have challenged the Commission's reparation order on the ground that it is arbitrary and unsupported by substantial evidence. Even though the railroads claimed in the district court that the Commission's order was unsupported by substantial evidence, they did not certify the administrative record containing the evidence that was before the Commission. Rather, only the Commission's decision stating its findings and conclusions was certified to the district court. Although the railroads did file a memorandum in response to Erco's second motion for summary judgment, no other evidentiary material was presented in response to that motion.

A Section 16(2) suit "shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated ..." 49 U.S.C.A. § 16(2).[3] In *Mississippi Valley Barge Line Co. v. United States*, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934), a carrier sought to enjoin a Commission rate order but failed to introduce in the district court the evidence presented to the Commission. The Court stated:

> The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence

**2.** Section 16(2) provides:

If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the

trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.

**3.** Section 16(2) of the Interstate Commerce Act as recodified has been changed slightly. 49 U.S.C.A. § 11705(d)(1) provides that "[t]he findings and order of the Commission are competent evidence of the facts stated in them."

upon which they were made.... The appellant did not free itself of this restriction by submitting additional evidence in the form of affidavits by its officers. For all that we know, the evidence received by the Commission overbore these affidavits or stripped them of significance. The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion. *Spiller v. Atchison, T. & S.F. R. Co.,* 253 U.S. 117, 125, 64 L.Ed. 810, 817, 40 S.Ct. 466.

*Id.* at 286, 54 S.Ct. at 693 (other citations omitted).

Citing *Mississippi Valley Barge Line,* the Supreme Court has held that an appellant may not challenge on appeal the findings of the Commission when the evidence upon which those findings were made was not included in the record before the appellate court. *Lubetich v. United States,* 315 U.S. 57, 58 n.3, 62 S.Ct. 449, 450 n.3, 86 L.Ed. 677 (1942). The Court recently noted that, if the carrier fails to produce opposing evidence to a Commission order containing findings on all matters essential to a shipper's recovery, the Commission's findings and order may not be rejected by the fact finder and the shipper is entitled to judgment. *Interstate Commerce Commission v. Atlantic Coast Line R. Co.,* 383 U.S. 576, 594 n.6, 86 S.Ct. 1000, 1011 n.6, 16 L.Ed.2d 109 (1964) (citations omitted).

In a case involving an action by the United States to recover penalties for the defendant's violation of an Interstate Commerce Commission service order, in which the defendant challenged the validity of the service order, this Court stated:

> The only record of the Commission which was before the district court was the service order itself, containing the [Commission's Safety and Service] Board's summary findings, the expression of its opinion as to the existence of the emergency [*i. e.,* the emergency rail car

shortage giving rise to the service order] and the order based thereon. It is an established rule that the findings of the Commission may not be challenged on review in the absence of evidence upon which they were made and a complainant may not free itself of this restriction by attempting to introduce additional evidence on the hearing. *Mississippi Valley Barge Line Co. v. United States,* 292 U.S. 282, 286, 54 S.Ct. 692, [693,] 78 L.Ed. 1260 (1934); *Spiller v. Atchison, T. & S.F. Ry. Co.,* 253 U.S. 117, 125, 40 S.Ct. 466, [469,] 64 L.Ed. 810 (1920).

*United States v. Southern Railway Co.,* 364 F.2d 86, 94 (5th Cir. 1966), *cert. denied,* 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967).

The railroad's mere reference to the inconsistency between the administrative law judge's finding that the consignors had an adequate number of cars to sufficiently supply Erco and the Commission's superseding finding is not a sufficient showing that the Commission's order is unsupported by substantial evidence. The burden of presenting to the district court the record of the evidence submitted to the Commission rests upon the party that is challenging the Commission's order on the ground of lack of substantial evidence. *Mississippi Valley Barge Line Co. v. United States, supra,* 292 U.S. at 286, 54 S.Ct. at 693. Because the Commission's findings and order are prima facie evidence of the facts stated therein and because the railroads failed to certify the administrative record reflecting the evidence that was before the Commission, the district court did not err in finding that the factual findings of the Commission were supported by substantial evidence. Given the administrative record before the district court, the Commission's findings were unassailable and therefore there was no genuine issue as to the material facts stated in the findings and order of the Commission.[4]

---

4. This Court has noted in a case discussing Fed.R.Civ.P. 56 that

> [W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and of course,

The railroads also contend that a genuine issue exists as to another material fact: the responsibility of allocating the rail cars. The district court remanded *Erco I*, stating that the determination whether the consignors or Erco ordered the cars from Seaboard was significant because, if the consignors, rather than Seaboard, had the responsibility for allocating the cars to Erco, the allocation by the consignors might have been the cause of Erco's inability to obtain a sufficient number of cars to utilize the multiple-car rate. The Commission on remand in *Erco II*, however, stated that, regardless of the consignors' allocation of cars among their various phosphate rock customers, they could not have accumulated enough cars to satisfy Erco's requirements without incurring demurrage charges. The Commission in *Erco II* recognized that the originating carrier, Seaboard, had the responsibility to allocate rail cars among various consignors, including the consignors in this case, and that once the cars were distributed to the consignors they could allocate the cars among their consignees in any manner. 361 I.C.C. at 817. However, the Commission also found that, even if the consignors had ignored the needs of all of their other consignees, they could not have accumulated enough cars for Erco and that under these circumstances the consignors' power to allocate cars to their consignees was irrelevant. *Id.* There is no genuine dispute concerning which party had the responsibility for allocating the cars to Erco. Rather, the only dispute concerns significance accorded this fact by the Commission in *Erco II*.

■ The railroads have failed to show that there are any genuine issues as to the existence of any material facts in this case. Further, their contention that this case, because of its complexity, is not susceptible of disposition by summary judgment is without merit. We do not view this case as particularly complex, but even if we did, "[t]he existence of a difficult or complicated question of law, when there is no issue as to

the facts, is not a bar to summary judgment." *Ammons v. Franklin Life Ins. Co.*, 348 F.2d 414, 417 (5th Cir. 1965).

The railroads also argue they were denied due process because the district court did not hold an oral hearing on Erco's motion for summary judgment at which they could present a challenge to the district court with respect to the Commission's findings. They argue that no evidence was submitted in response to Erco's second motion for summary judgment because they expected to be able to respond at an oral hearing to which they claim they were entitled under Rule 56.

■ Although Rule 56 requires notice to an adverse party and a hearing, the hearing need not be an oral or formal evidentiary hearing. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 863 (5th Cir. 1970). In *Kibort v. Hampton*, 538 F.2d 90, 91 (5th Cir. 1976), this Court stated:

> What the rule contemplates is 10 day advance notice to the adverse party that the matter will be heard and taken under advisement as of a certain day. This provides the adverse party with an opportunity to prepare and submit affidavits, memoranda and other materials for the court to consider when ruling on the motion. If the adverse party is given this opportunity, then he has been heard within the meaning of Rule 56.

■ The district court did not deny the railroads due process by declining to hold an oral hearing on Erco's motion for summary judgment. The railroads had every opportunity from the time Erco's second motion was filed on February 13, 1980, until the district court granted Erco's motion on April 11, 1980, to respond to that motion by submitting evidence, including the certified administrative record, to the court for consideration in its ruling on granting summary judgment. However, the railroads merely filed, on February 8, 1980, a memorandum in opposition to Erco's motion. The railroads received an adequate hearing un-

---

he does not do that by mere denial or holding back evidence.

*Bruce Construction Corp. v. United States*, 242 F.2d 873, 875 (5th Cir. 1957).

der Rule 56. *Kibort v. Hampton, supra,* 538 F.2d at 91.

■ The railroads also contend that the Commission's order is arbitrary.[5] First, they claim that the order rendered them liable to a party—Erco—with whom they had no relationship in a situation in which they had no control over the number of cars allocated to Erco. Second, they argue that the Commission improperly applied the rule of *Ormet Corp. v. Illinois Central R. Co., supra,* 341 I.C.C. 647 (1972), to the facts of this case.

■ The railroads' contention that they lacked any relationship with Erco by which they could be held liable to Erco for reparation is without merit.[6] Erco was the named consignee on the bills of lading issued by Seaboard and it was the party that caused the shipments to be made. Under Erco's agreements with the consignors, it was the party that ultimately bore the transportation charges. The Commission has held that the party ultimately bearing the shipping charges has a right of action for reparation. *E. g., Plaswood Corp. v. Alton & S. R.,* 321 I.C.C. 434, 445 (1964); *Thomson Phosphate Co. v. Atlantic Coast Line R. Co.,* 303 I.C.C. 25 (1958). Thus, the fact that Erco was not a party to the transportation contracts between the consignors and the railroads does not bar a reparation order in Erco's favor.

The Commission in *Erco I* and *Erco II* determined that the doctrine of *Ormet, supra,* entitles Erco to recover reparation from the railroads. The railroads argue that *Ormet* was improperly applied by the Commission because *Ormet* was concerned only with the prevention of a carrier's un-

just enrichment for the collection of demurrage charges whereas demurrage was not involved in this case.

In *Ormet* the complainant, which had consistently in the past shipped utilizing multiple-car rates, incurred demurrage charges when it held rail cars in order to accumulate enough cars to receive the multiple-car rate. The carrier, because of a car shortage, was unable to sufficiently supply the complainant. The Commission in response to that shortage had issued a service order increasing demurrage charges in order to stimulate movement of rail cars. The shipper sought reparation for the demurrage charges but the Commission denied recovery because the complainant could have mitigated the demurrage charges by shipping, in the cars it had available, at the single-car rate when it became apparent that the shipment could not be tendered before demurrage charges began to accrue as complainant accumulated the cars required for the multiple-car rate.

However, the Commission held in *Ormet* that shippers should not be required to act in peril of incurring demurrage charges in attempting to take advantage of a multiple-car rate. The Commission reasoned that such a situation which allows a carrier to charge a shipper at the single-car rate, when the carrier is responsible for such charges by reason of its own inability to furnish a shipper with sufficient cars to allow the shipper to utilize the multiple-car rate, fosters unjust enrichment of the carrier. The Commission stated:

[W]e conclude that during the existence of outstanding car service orders when the origin carrier—the line responsible for supplying the particular equipment to

---

5. An agency's finding, even though supported by substantial evidence, may reflect arbitrary and capricious action. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974).

6. The railroads argue for the first time in this appeal that the Commission's finding of liability against them in favor of Erco is a deprivation of property in violation of the Fourteenth Amendment. The rule that an appellate court should not consider issues raised for the first

time on appeal may be ignored where a question of law is involved and refusal to consider it would result in a miscarriage of justice. *Martinez v. Mathews,* 544 F.2d 1233, 1237 (5th Cir. 1976). In view of the Commission's rule allowing the party ultimately bearing the shipping charge to recover reparation from the carrier, the railroads' constitutional argument is utterly without merit. Further, the railroads offer in their brief no support in logic or precedent for their contention.

meet the tarrif [sic] minimum—is unable to furnish the quantity required to meet the published minimum applying to a multiple-car rate, single-car rates are prima facie unjust and unreasonable to the extent they exceed the multiple-car rates; provid[ed] the shipper affirmatively shows the Commission that [the shipper] was in a position to take advantage of lower multiple-car rates and timely ordered the necessary cars from the carrier, and was physically able to accept and load the cars ordered, only to find the railroad unable to furnish the cars in sufficient number prior to the commencement of demurrage on those cars placed first. We realize this imposes a form of penalty on the carriers by having to perform single-car service at the multiple-car rate, but it is only just that the party having the duty should suffer for not discharging it.

341 I.C.C. at 655 (footnote omitted).

■ Unlike the complainant in *Ormet*, which did not recover reparation because it failed to ship in the cars it had available before incurring demurrage charges, Erco, instead of holding cars for an extended period in order to accumulate enough cars for a shipment at the multiple-car rate, shipped in the available cars at the single-car rate. Had Erco withheld cars in order to fulfill the multiple-car rate weight requirement, it would have incurred demurrage charges. The Commission found that Erco relied on its right of action under *Ormet* to recover the difference between the single-car rate at which it shipped and the multiple-car rate at which it would have shipped but for Seaboard's inability to furnish enough cars. The action of Erco was exactly that which the Commission sought to encourage by the *Ormet* rule: alleviate an immediate car shortage by expediting shipments at the single-car rate with the provision that the shipper could recover the difference between the single-car rate and the multiple-car rate. The purpose of the Commission in *Ormet* was "to encourage the early return of cars and to avoid penalizing shippers who might be tempted to incur demurrage in order to receive lower multiple car rates." *Erco II, supra,* 361 I.C.C. at 817.

Thus the railroad's contention that *Ormet* was concerned only with the prevention of a carrier's unjust enrichment from the collection of demurrage manifests a misreading of *Ormet*. *Ormet* held that the shipper in that case could *not* recover demurrage charges. Under *Ormet* a shipper can recover the difference between single-car and multiple-car rates, but not demurrage charges. Moreover, the railroads' contention that demurrage is not involved in this case also flows from a misunderstanding of *Ormet*. It was because the consignors could not have accumulated sufficient cars for Erco without incurring demurrage, and because under *Ormet* Erco could recover the difference between the single-car and multiple-car rate, that Erco agreed to ship at the single-car rate.

Under the arbitrary and capricious scope of review we must consider "whether the [Commission's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Commission "must articulate a 'rational connection between the facts found and the choice made.'" *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *quoting Burlington Truck Lines v. United States,* 371 U.S. 156, 158, 83 S.Ct. 239, 240, 9 L.Ed.2d 207 (1962). The Commission's determination that this case is a proper case for the application of the principle of *Ormet* is not arbitrary.

■ Finally, the railroads contend that the district court erred in failing to address in its order granting Erco's second motion for summary judgment the propriety of the Commission's application of *Ormet* and also in failing to propound reasons for its enforcement of the Commission order. The district court's order granting summary judgment and enforcing the Commission's order stated that "no issue of material fact

remains preventing entry of summary judgment and the decision of the Commission, as subsequently clarified, is based upon adequate findings and is supported by substantial evidence." Although findings of fact and conclusions of law need not be included in orders granting summary judgment under Fed.R.Civ.P. 52(a), the parties are entitled to know the reasons upon which the summary judgment was based in order to facilitate appellate review. *Hanson v. Aetna Life & Casualty*, 625 F.2d 573, 575 (5th Cir. 1980). In this case the district court's grant of the summary judgment was based on the reasons set forth by the Commission in its order.

AFFIRMED.