**Thurman Wayne ARMON**

v.

**Clarence JONES.**

**No. CA3–80–1562–F.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 23, 1983.

---

Donald C. McLeaish, Duncanville, Tex., for plaintiff.

Sue Lagarde, Asst. Dist. Atty., Dallas, Tex., for defendant.

## MEMORANDUM ORDER AND OPINION

ROBERT W. PORTER, District Judge.

This cause of action is a complaint filed under the Civil Rights Act, 42 U.S.C. § 1983. The prisoner, Plaintiff Thurman Wayne Armon, has alleged that the prison conditions and classifications at the Dallas County Jail are improper which led to the physical beating inflicted on him. Plaintiff seeks monetary damages for the assault.

### I. FACTS

The background facts of the case are generally not in dispute. On or about February 10, 1975, the Plaintiff Armon was in the lawful custody of Clarence Jones, Sheriff of Dallas County, Texas. On that date, Plaintiff was transferred from tank 12–N–7 in the New Jail (classified for male felons, white/black, over 26 years of age, last names beginning A through J) to tank 6MN–1 in the Old Jail (classified for male felons, white, over 26 years, last names beginning with A through J). Apparently, the Plaintiff was moved in order to make room in the New Jail for additional prisoners. After the transfer and on the same day, Plaintiff was attacked by two other inmates, Michael Harp and Tommy J. Holt. No sheriff's department personnel witnessed or participated in the attack in question.

Plaintiff and both his attackers were white males, age 26, whose last names began with A through J. All three were awaiting trial for the following felonies: Armon, aggravated robbery; Harp, burglary of a habitation (habitual), burglary of a building (habitual), unauthorized use of a motor vehicle (habitual); Holt, aggravated robbery with a deadly weapon (2 cases), injury to a witness (federal charge). Plaintiff when placed in jail was also charged with unlawfully carrying a weapon (2 cases), violating the Controlled Substance Act (2 cases), driving while intoxicated, and passing worthless checks. At some point in time, all of these additional charges were either dismissed or discharged.

Plaintiff's prior adjudicated record at Dallas County Sheriff's Department included: drunk, 1964, sentenced to 7 days and $89.00; robbery with firearms reduced to theft under $50.00, 1969, sentenced to 6 months; theft under $50.00, 1969, sentenced to 50 days; driving while license suspended, 1969, sentenced to 30 days; driving while intoxicated, 1969, sentenced to 75 days. Plaintiff's record at the Sheriff's Department also had the following offenses which were either dismissed or disposition unknown: desertion of U.S. Army, 1960; simple assault, 1963; checks (Kansas) 1963; checks (Arkansas), 1963; vehicle theft, 1967; burglary, 1974; dangerous drugs, 1974.

The two attackers also had extensive records at the Sheriff's Department. Michael Harp was convicted of: auto theft, 1965, sentenced to 5 years; armed robbery reduced to aggravated assault with a deadly weapon, 1966, sentenced to 2 years; at-

tempted burglary, 1972, sentenced to 2 years. Prior offenses either dismissed or disposition unknown included sodomy (juvenile), 1962. Tommy Holt was convicted of assault and battery, 1965, fined $20.00; destruction of private property, 1965, fined $20.00; second degree burglary (2 cases), 1967, sentenced to 5 years each; robbery with firearms, 1970, sentenced to 17 years. Other offenses of record but dismissed or disposition unknown included 13 miscellaneous Oklahoma violations.

Plaintiff made no complaint about his injuries to the sheriff's personnel after the attack until his condition was noted in the morning of February 11, 1975, by a jail guard who promptly took Plaintiff to the nurse's station. There does exist a dispute whether the jail guard or the Plaintiff's attorney first noted and reported Plaintiff's injuries. Plaintiff states that his attorney first reported his injuries although his attorney by sworn affidavit apparently refutes such statements. Regardless of who reported the attack, Plaintiff's medical treatment began as soon as he was taken to the nurse's station at the jail. A physician examined Plaintiff early the next morning, after which time the Plaintiff was transferred to Parkland Memorial Hospital. Plaintiff received plastic surgery treatment for these same injuries sustained in the attack, resulting in a stay of about two weeks in the hospital. After Plaintiff was transferred back to the jail, he was placed in the Jail's hospital ward for continued recuperation.

The attackers of Plaintiff were later formally charged. Michael Harp was indicted for the offense of assault to which he pled guilty and was sentenced to 10 years in the Texas Department of Corrections.

Plaintiff did not have his jury trial for the offense of aggravated robbery with a deadly weapon until after his hospitalization had ended. Plaintiff was convicted on October 23, 1975, and sentenced to 65 years in the Texas Department of Corrections on December 19, 1975. Plaintiff filed suit in this present case on November 25, 1980.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The burden of proof falls upon the party seeking summary judgment and all reasonable doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Erco Industries, Ltd. v. Seaboard Coast Line R. Co.*, 644 F.2d 424, 428 (5th Cir.1981); *Keiser v. Coliseum Properties*, 614 F.2d 406, 410 (5th Cir.1980). Further, in considering such a motion, the district court must view the summary judgment evidence in the light most favorable to the nonmovant. *Erco, supra* at 428; *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir.1980).

## III. STATUTE OF LIMITATIONS

Defendants have forcefully argued that the statute of limitations has effectively blocked the bringing of this suit. Plaintiff was injured while in the Dallas County Jail on February 10, 1975. Suit was not filed by the Plaintiff until November 25, 1980, almost five years after the cause of action arose.

The statute of limitations which is applicable in this case is TEX.REV.CIV.STAT. ann. Art. 5526, § 6 (Vernon's 1979) which reads:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterwards, all actions or suits in court of the following descriptions: ... 6. Action for injury done to the person of another.

Although the Plaintiff did not file his suit within two years as required above, an applicable tolling provision may have tolled the running of the limitation period. The provisions of TEX.REV.CIV.STAT. ann. Art. 5535 (Vernon's 1968) read:

> If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues ... a person imprisoned ..., the time of such disability shall not be deemed a portion of the time limited for the commencement of the action after the removal of his disability that is allowed to others by the provisions of this title.

Whether the tolling provision applies to this cause of action is one question before this Court.

■ In deciding if the tolling provision applies, this Court must apply state tolling provisions whenever state statutes of limitations are borrowed. *Board of Regents of S.U.N.Y. v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). *Miller v. Smith*, 431 F.Supp. 821 (N.D.Tex.1977), *vacated and remanded*, 615 F.2d 1037 (5th Cir.1980). In other words, this Court must determine the status of Texas law on the question of whether the tolling statute applies to prisoners bringing § 1983 actions.

There have been a few Texas decisions at the court of appeals level, and none by the Supreme Court, construing art. 5535. Indications appear, however, that if the Supreme Court ruled on the matter, they would uphold the applicability of the statute. Several courts of civil appeals decisions point to this conclusion. In the case of *Blum v. Elkins*, 369 S.W.2d 810 (Tex. Civ.App.—Waco 1963, *no writ*), the Court held that the imprisonment of the Plaintiff did not toll the running of the statute of limitations. In this case, the Plaintiff knew four weeks before he was incarcerated that he would have to file suit. Such an opportunity to avail himself of the judicial system before imprisonment or custody overcame the disability to sue contemplated by the tolling provisions.

The application of the tolling provisions goes to the opposite extreme in the case of *Jenkins v. State*, 570 S.W.2d 175 (Tex.Civ. App.—Houston [14th Dist.] 1978, *no writ*). The Court held that the statute of limitations was tolled during the period of the appellant's imprisonment and did not begin to run until after the release of the Plaintiff. The Plaintiff had filed suit within two years after his release but almost four years after his cause of action accrued while in prison.

Yet another set of circumstances are found when the Plaintiff files suit while still under the legal disability of imprisonment. Such facts existed in the case of *Johnson v. McLean*, 630 S.W.2d 790 (Tex. App.—Houston [1st Dist.] 1982, *no writ*). The Plaintiff filed suit while in prison for a cause of action which accrued while in prison. Filing of suit was within the statute of limitation period but service of process was not properly executed within the limitation period. The Court held that the suit was properly dismissed. The Court reasoned that where a legally disabled party timely files suit despite the existence of the legal disability, the protective provisions of art. 5535 afterwards do not apply. Plaintiff had access to the courts, utilized that access, and thus became subject to the same judicial rules and restraints as every other litigant in the court system.

These three cases represent a continuum upon which Texas reasoning may be plotted. On the far left is the inapplicability of the tolling provisions as dictated by a Plaintiff's ability to utilize the courts before entering prison. In the middle of the continuum is the protective measures of the tolling provisions where statute of limitations is tolled. The characteristics of this segment are that a Plaintiff is imprisoned, has not utilized the courts, and the cause of action arises during imprisonment. Suit

may be filed any time within the limitation period which begins to run after release from jail. The extreme right of the continuum represents the segment where Plaintiff may not utilize the protective provisions of the tolling statute after suit is filed. The facts of a case may have allowed the tolling of the limitations period originally, but the subsequent filing of a lawsuit erases the legal disability which is statutorily given to prisoners, allowing a limitations period to once again resume running. Such circumstances exist when a Plaintiff files suit while in prison and then does not pursue the service of process or prosecution of the issues.

It appears to this Court that the case at bar is located within the middle segment of the continuum where the Plaintiff is protected by the tolling provisions. This conclusion reflects this Court's anticipation of the manner in which the Texas courts would hold on this issue.

■ Plaintiff Armon was under the legal disability of imprisonment when his cause of action accrued and the attack occurred. Article 5535 stopped any running of the limitation period. Such limitation period would not start running until either: (a) Armon was released from jail, or (b) Armon filed suit. In this case, Plaintiff filed suit and then adequately achieved service of process upon the proper parties. Thus, limitations did not expire. If service of process had not been executed within two years from the filing of the lawsuit, or if suit had not been filed within two years after Armon's release from jail, then the limitations period would have run. However, such facts do not exist in this case. Plaintiff's pursuit of his legal remedies are well within the limitation period contemplated by Texas law.

## IV. SPEEDY TRIAL

Plaintiff alleges that his constitutional rights were violated because he was too injured to go to trial, which denied him a speedy trial. The relevant dates of the case are as follows: (1) the Grand Jury voted to indict Plaintiff on January 29, 1975; (2) an examining trial was held on January 30, 1975; (3) the indictment was presented on February 3, 1975; (4) Plaintiff was arrested on or about February 10, 1975; (5) the beating occurred on February 11, 1975; (6) trial of the case actually occurred on September 22, 1975.

■ To guide a court in determining whether a constitutional speedy trial violation has occurred, the Supreme Court has set out through a balancing test four factors that should be considered. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the Defendant's assertion of his right; and (4) prejudice to the Defendant. As outlined in *Barker*,

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.
>
> Rather they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id.* at 533, 92 S.Ct. at 2193. In balancing the facts and circumstances of this case, this Court holds that Plaintiff was not denied a speedy trial.

A period of about eight months elapsed between arrest and trial. The first calendar setting for trial was one week after the indictment, or the same day that Plaintiff was transferred and later attacked. On that day and for twelve subsequent settings the case was passed by agreement of both sides.

During the initial period of incarceration, Plaintiff required hospitalization including a two week stay in Parkland Hospital for

plastic surgery and a lengthy period of recuperation in the jail's hospital ward. A questionable period of inactivity is found between the trial setting of August 11, 1975, and a long pass to September 22, 1975. Such delay, however, apparently resulted from plea bargaining in process. It must be noted that during the entire time that delays occurred, Plaintiff was represented by counsel. The record indicates that none of the postponements occurred over the objection of the defense and no motion for speedy trial was ever made. Furthermore, denial of speedy trial was not raised on the subsequent appeal of the conviction. Consequently, no specific prejudice to the Plaintiff is apparent from the facts or even alleged by the Plaintiff. Plaintiff should be afforded no relief.

## V. MEDICAL CARE

Plaintiff's complaint states that "... nothing medically was done until the following day [after the attack] when a guard 'happened' to discover the disfigurement of the face area." Plaintiff later changed his statement in a subsequent document stating that "The full truth is my attorney came up to the jail that day or none of the guards would have even troubled theirselves to notice me ..."

■ To state a cognizable claim and for a claim of inadequate medical care to rise to the level of a violation of the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Looking at the evidence in favor of the Plaintiff, it does not appear that Plaintiff received poor medical treatment.

Plaintiff received immediate medical attention for his injuries after their discovery. Plaintiff was treated less than 24 hours after the beating, received plastic surgery at Parkland Hospital for corrective measures, and was assigned to the hospital ward of the prison system for additional recuperation. Such treatment as viewed by this Court is not deliberate indifference to the serious medical needs of a prisoner.

The question of who reported Plaintiff's injuries is irrelevant in this case considering the actual promptness of treatment acquired by the Plaintiff after the beating. It is interesting to note that according to affidavits filed by the Defendant, the Plaintiff reported to the nurse after the attack that he had not "reported the injury until now [February 11, 1975]." Furthermore, Plaintiff's buff card which registers visitors for an inmate shows that no attorneys visited Plaintiff until after his release from Parkland. Plaintiff's attorney in a sworn affidavit confirms that he did not assist Plaintiff in acquiring medical attention. Such factors support Defendant's statements that a jail guard independently reported Plaintiff's injuries and acquired medical attention for the prisoner in a responsible manner.

## VI. CLASSIFICATION CHALLENGES

### A. *Due Process*

■ Plaintiff maintains that his constitutional rights were violated due to the manner of classification and detainment imposed during his imprisonment. At the time that Plaintiff was incarcerated in the Dallas County Jail, Plaintiff was considered a pretrial detainee since he was formally indicted and was held in custody for trial. As a pretrial detainee, confinement conditions must be analyzed as a due process deprivation rather than as cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979); *Jones v. Diamond*, 594 F.2d 997, 1003 (5th Cir.1979).

■ Under due process analysis, certain guidelines have been promulgated in assisting a Court for determining constitutional violations. *Wolf v. McDonnell*, 418 U.S.

539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Bell v. Wolfish, supra; Jones v. Diamond, supra.* These guidelines include (a) classification must be reasonably necessary for effective control of the jail; and (b) custody of the pretrial detainees must not be punishment per se. If these guidelines are met then constitutional violations will not be found.

In the case of *Bell v. Wolfish, supra,* the Court did not forbid the co-mingling of convicted prisoners and pretrial detainees. The Supreme Court provided directives with the statement:

> ... If a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless- a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees qua detainees ... Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Id.* at 539, 99 S.Ct. at 1874.

The Court went on to hold that:

> We need not here attempt to detail the precise extent of the legitimate governmental interests that may justify conditions or restrictions of pretrial detention. It is enough simply to recognize that in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Id.* at 540, 99 S.Ct. at 1875.

*See* also *Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). This Court will not attempt to tell the Dallas County Jail officials how to run their jail unless they fall outside of constitutional perimeters.

Jailhouse peace and tranquility is of primary importance in controlling a jail. Grouping of prisoners is one of the few effective tools to control jail behavior. In this case it is undisputed that Dallas County Jail has established classifications for groupings of prisoners for control of the jail inmates. Plaintiff was placed in his jail cell assignment *according to his designated* classification.

■ In determining a prisoner's classification, a classifying officer cannot always predict dangerousness of inmates after being placed in a prison environment. Only through prior actions or the severity of charges can an educated guess be made on potential jail behavioral problems. In placing the Plaintiff in his cell assignment, the Sheriff was not put on any notice of the probability of the ensuing violence. He was warned, however, of Plaintiff's own dangerous tendencies. Plaintiff through the examining trial and indictment showed probable cause of guilt in committing a severe felony. Past rap sheets of the Plaintiff also showed serious criminal conduct, justifying the separation of Plaintiff from other jail inmates who were less dangerous. Indeed, Plaintiff's history dictated a felon classification for the protection of other prisoners with lesser criminal backgrounds. The past actions of Tommy Holt and Michael Harp also did not indicate previous jail violence by them. Nothing showed that the two assailants would attack or that Plaintiff would invite attack. In considering all of the evidence, the classification of Plaintiff was reasonable in its attempt to protect *all* of the inmates from violence.

Classifications under the Dallas system included the separation of males from females, witnesses from other prisoners, offenders awaiting trial from other members and severe violations from violations of less severity (See Appendix I). This classification system was in effect and operational when the alleged assault occurred. These classifications were the byproduct of

judicial intervention from the case of *Taylor v. Sterrett*, 344 F.Supp. 411 (N.D.Tex. 1972), *aff'd in part and vacated in part*, 499 F.2d 367 (5th Cir.1974), *appeal dismissed*, 527 F.2d 856, *aff'd and modified in part, rev'd in part*, 532 F.2d 462 (1976), *vacated*, 600 F.2d 1135 (5th Cir.1979) (hereinafter cited as *Taylor* ).

The Defendants in *Taylor* are the same Defendants in the case at bar. A review of the docket progression of *Taylor* shows the reasonableness of and approval for the jail classification system utilized by Dallas County.

During the time period that the Dallas system was under judicial scrutiny, the Sheriff was required to make a report for the Federal Court every three months. During this time the Court directed that pretrial detainees' rights should be subjected to closer scrutiny. *Taylor*, 344 F.Supp. 411, 413. It was also held that "mere confinement of the inmates in the Dallas County jail is not a failure of due process." *Id.* at 421. The Court did not find any other violations of due process. On appeal, the Fifth Circuit vacated part of the district court's order and instructed the judge to "reconsider that portion of her order that directed the sheriff to inaugurate a classification system taking into consideration security, integration and status of inmates as to whether they are pretrial detainees or convicted inmates in light of the realities of the case." *Taylor*, 499 F.2d 367, 369. The District Court's only mandate after this remand was in the integration of prisoners. The Court specifically approved the progress that was made in the classification of inmates within the thirty categories defined. No subsequent order was issued concerning pretrial detainees classifications. The classifications that appear today were substantially the same as those approved by this judicial review. The final action came when the Fifth Circuit later decided to vacate the trial court's judgment with instructions to dismiss the entire case. *Taylor*, 600 F.2d 1135. This progression of opinions shows that pretrial detainee status has been taken into consideration in the past and has been tacitly approved in the operation of the jail. Such history and utilization shows the reasonableness of the system in the control of the jail population.

■ Under the guidelines for constitutional violations, custody of pretrial detainees must not be punishment per se. It does not appear that placing the Plaintiff in the same cell with Tommy Holt and Michael Harp was punishment. In the case of *Jones v. Diamond, supra,* the court delineated perimeters to "punishment per se":

> We hold that the Constitution does not require elaborate prisoner classification at the jail level. The Supreme Court has held that even at the penitentiary level prisoner classification is confined to the sound discretion of prison officials, under state law. It is only when the officials fail to protect prisoners from homosexual attacks, personal violence, or unnecessary contact with the contagiously ill that the federal courts are warranted in entering the classification picture ... We should think that it would ordinarily be sufficient if jailers in county jails would promulgate, maintain, and adhere to a policy which protects pretrial detainees from violent, disturbed, and contagiously ill individuals as far as reasonably possible.

*Id.* at 1016.

Dallas County Jail classifications located themselves within these perimeters. Numerous specific classifications exist for the inmate's segregation and safety (see Appendix I). Plaintiff, because of his past record of criminal activity and the seriousness of the pending charges for which he was later convicted, was correctly transferred to section 6–MN–1 (classification for felons, white, over 26 years). No other classification would be correct or logically consistent with the given factual background of the Plaintiff. Thus, Plaintiff's custody was not punishment per se.

■ Since the jail's classification system was reasonable in the control of prisoners and since custody of Plaintiff was not punishment per se, then this constitutional claim by the Plaintiff must fail. An isolated instance of an assault by a fellow inmate, does not raise a constitutional issue of due process.

B. *Equal Protection*

■ Plaintiff also alleges that he was denied his constitutional rights of equal protection, due to his classification as a pretrial detainee. Stated alternatively, Plaintiff contends that it violates equal protection to treat misdemeanor pretrial detainees different from felony pre-trial detainees or to treat lesser felony pretrial detainees different from other felony pretrial detainees. Unless fundamental rights or suspect classifications are involved (neither of which are alleged in this case), different classifications of inmates under state law will not violate equal protection standards as long as they bear a rational relationship to some legitimate state purpose. *Durso v. Rowe*, 579 F.2d 1365 (7th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Such state purpose and rational relationship exists in this case.

■ It is a legitimate state interest to protect less serious offenders from potentially more serious offenders. Prisoners are classified in different categories for protection of inmates and for administration of the jail itself. At the time of the assault, Dallas County Jail used a list of classifications for segregation of prisoners (see Appendix I). Statutorily, certain categories are required in segregation of inmates. *See* TEX.REV.CIV.STAT.ANN. art. 5115 (Vernon, Supp.1980). In addition to the state law requirements, other categories were used by the County Jail for administrative purposes. At the time of the attack, Plaintiff was separated from other inmates under these categories, namely: witnesses were in the administrative tanks; females were in New Jail 10th Floor; juveniles were in a separate facility; first offenders, awaiting trial were in New Jail tanks 12–N–1, 12–N–2, 111–N–1, 11–N–2; and diseased prisoners were in Old Jail 8–N–3, 8–S–3. These categories were protective of all inmates and had a past record of curbing prison violence.

Several factors indicate a rational basis for distinguishing between felons and misdemeanants. First, the type of punishment is different. Misdemeanants may only be incarcerated in the county jail for up to one year (the maximum penalty for a Class A misdemeanor), or two years in the case of driving while intoxicated. TEN.PENAL CODE § 12.21 (1974); TEX.REV.CIV. STAT.ANN. arts. 6701*l*–1, 6701*l*–2 (Vernon Supp.1980–81). County prisoners are eligible for such privileges as work-release and serving time on weekends, privileges generally denied state prisoners. TEX.CODE CRIM.PROC.ANN. art. 42.03 § 5(a) (1979). These factors, within the inmate's knowledge, provide an incentive to behave and reduce the likelihood that he will present a hazard to jail discipline while he is a pretrial detainee. Since the potential sentences for felons are potentially much harsher, the same incentive to behave is reduced.

Although there are some violent misdemeanors, felonies are more likely to involve serious violence or anti-social conduct. An inmate that commits a felony outside of jail is more dangerous in his confinement within jail. Thus different treatment is necessary.

Yet another factor in jailhouse behavior is the desire to behave in order to make bond. There is a greater likelihood that a misdemeanant will shorten his stay by making bond at some point before trial. Bail is set in Class A and B misdemeanors generally at $200, but in felonies at $500–750 or higher. This incentive again affects conduct in jail.

These factors supply the rational basis for the Dallas County Jail to distinguish between misdemeanants and felon pretrial detainees. Thus Plaintiff's equal protection claim must also fail.

## VI. CONCLUSION

Plaintiff has shown no basis for relief. No genuine issue of material fact exists and the Defendants are entitled to judgment as a matter of law. Therefore,

It is ORDERED that Defendant's Motion for Summary Judgment is Granted and all relief sought by the Plaintiff is denied. Judgment will be entered in favor of the Defendants.

### APPENDIX I

Main Street Jail classifications (Old Jail):

6M Floor  – Last names beginning with A thru J

6MN–1  – Felons, White, over 26 Yrs.
6MN–2  – Felons, Black, over 26 Yrs.
6MS–3  – Felons, Black over 26 Yrs.
6MS–4  – Medical Status, White/Black.

7  Floor  – Last names beginning with K thru Z

7N –1  – Felons, White, over 26 Yrs.
7N –2  – Felons, Black, over 26 Yrs.
7S –3  – Felons, Black, over 26 Yrs.
7S –4  – Felons, White/Black, under 26 Yrs.

R –1  – Lesser Felons, Black, under 26 Yrs.
R –2  – Misdemeanors, Black, under 26 Yrs.
R –3  – Misdemeanors, Black, under 26 Yrs.
R –4  – Misdemeanors, White/Black, over 26 Yrs.
R –5  – Misdemeanors, White/Black, over 26 Yrs.
R –6  – First Offenders –Misdemeanors, Black.

L –1  – Lesser Felons, White, under 26 Yrs.
L –2  – Misdemeanors, White, under 26 Yrs.
L –3  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
L –4  – Misdemeanors, White, under 26 Yrs.
L –5  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
L –6  – First Offenders, Misdemeanors, White.

New Dallas County Jail Classifications:

12th Floor  – Last names beginning with A thru J

12N–1  – First Offenders, Black.
12N–2  – First Offenders, White.
12N–3  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
12N–4  – Homosexuals, White/Black.
12N–5  – Misdemeanors & Lesser Felons, White, under 26 Yrs.
12N–6  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
12N–7  – Felons, White/Black, over 26 Yrs.

12S–8  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
12S–9  – Misdemeanors & Lesser Felons, White, under 26 Yrs.
12S–10  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
12S–11  – Homosexuals, White/Black.
12S–12  – Contempt Offenders, H/F Military, White/Black.
12S–13  – Administrative Quarters, White/Black.
12S–14  – Felons, White/Black, over 26 Yrs.
12S–15  – Felons, White/Black, over 26 Yrs.

11th Floor  – Last names beginning with K thru Z

11N–1  – First Offenders, Black.
11N–2  – First Offenders, White.
11N–3  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
11N–4  – Homosexuals, White/Black.
11N–5  – DWI Offenders, White/Black.
11N–6  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
11N–7  – Felons, White/Black, over 26 Yrs.
11S–8  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
11S–9  – Misdemeanors & Lesser Felons, White, under 26 Yrs.
11S–10  – Misdemeanors & Lesser Felons, Black, under 26 Yrs.
11S–11  – Homosexuals, White/Black.
11S–12  – Contempt Offenders, H/F Military, White/Black.
11S–13  – Administrative Quarters, White/Black.
11S–14  – Felons, White/Black, over 26 Yrs.
11S–15  – Felons, White/Black, over 26 Yrs.

8th Floor

8N–1  – Administrative Quarters, White/Black.
8N–2  – Mental Status, White/Black.
8N–3  – Medical Status, White/Black.
8N–4  – Mental Status, White/Black.
8N–5  – Federal Offenders, White/Black.
8S–6  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
8S–7  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
8S–8  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
8S–9  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.
8S–10  – Immigration Offenders.
8S–11  – Administrative Quarters, White/Black.
8S–12  – Medical Status, White/Black.
8S–13  – Misdemeanors & Lesser Felons, White/Black, Trusty Status.